

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** E–14–910

| | |
|---|---|
| | **Opinion Delivered** September 30, 2015 |
| PAUL VOSS<br>APPELLANT | APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW<br>[NO. 2014-BR–02107] |
| V. | |
| DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES AND<br>HOUSING AUTHORITY OF<br>MAGNOLIA | |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Paul Voss appeals the Arkansas Board of Review's finding that he voluntarily left work without good cause connected with the work and is therefore disqualified from collecting unemployment benefits. He argues that the Board's finding is not supported by substantial evidence. We affirm.

Voss quit his job as maintenance superintendent for the Magnolia Housing Authority (MHA) on 19 May 2014 and applied for unemployment insurance benefits on 5 June 2014. In his claimant statement, he indicated that he quit his job due to "harassment on the job" and that he did not take steps to resolve the problem or situation before he quit. On June 23, the Department of Workforce Services (Department) notified Voss that

he was disqualified from receiving unemployment benefits because he left his work voluntarily and without good cause connected with the work.

Voss appealed to the Arkansas Appeal Tribunal, which held a hearing on 1 August 2014. Voss testified that he worked for the MHA for fourteen years. He explained that he had been suspended "without valid reason" in March 2014 and that when he returned to work in May 2014, he found himself "in the midst of a hostile work environment." He also stated that he had a number of health issues and that he "just couldn't handle the pressure up there." He explained that he only worked four days after his return to work in May and that he left his resignation letter on the desk of his boss, Richard Wyse. Voss stated that upon his return, Wyse had singled him out and scrutinized his actions unjustifiedly. He also blamed Wyse for forcing him to cancel a doctor's appointment in 2011 and stated that Wyse "had a history of giving me the third degree" whenever he had to leave for a doctor's appointment.

Voss testified that there was no authority beyond Wyse whom he could speak to about his problems and that MHA policy prohibited him from speaking to the housing authority board members. He also stated that Wyse gave him no opportunity to talk about his issues and that he did not inform Wyse of his resignation before leaving the resignation letter on Wyse's desk.

Richard Wyse testified that in February 2014, the housing authority implemented a new drug-testing policy for its employees, and Voss tested positive for hydrocodone. Wyse advised Voss that the housing authority needed a letter from Voss's doctor to verify that he was able to do his job without interference from any medications he may be

taking. Voss was suspended for a time, from March until May, but was ultimately allowed to return to work and was paid for the time he was suspended. Wyse had a meeting with Voss on May 14 and told him that he could not use a housing-authority vehicle until the housing authority had documentation that he was not a safety risk. Wyse admitted calling Voss but said it was to check on some reports that needed to be done, not to check up on him. Wyse stated that Voss did not talk to him or lodge any complaints before he resigned. Wyse also said that Voss could have talked to him or one of the housing authority board members about any issues that he had.

On 8 August 2014, the Appeal Tribunal issued a decision affirming the Department's determination. Voss then appealed to the Board of Review, which affirmed the Appeal Tribunal. In its decision the Board made the following findings:

> Although the claimant indicated that he worked in a "hostile work environment" and that Wyse treated him unfairly, the Board does not find that the claimant presented sufficient evidence to show that he was treated unreasonably by his supervisor. . . . The Board finds that the claimant did not quit his employment for a cause which would impel the average, able-bodied, qualified worker to give up employment. Further, the claimant admitted that he left a resignation letter for Wyse without speaking to Wyse about his concerns or reasons for quitting. . . . The claimant also indicated in his statement to the Department that he did not take steps to resolve the alleged problem prior to quitting. As such, the claimant did not take appropriate steps to address his concerns prior to leaving his employment.

Voss appealed.

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Rodriguez v. Dir.*, 2013 Ark. App. 361. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence

upon which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision that it did based upon the evidence before it. *Id.* Issues of credibility of witnesses and weight to be afforded their testimony are matters for the Board to determine. *Ballard v. Dir.*, 2012 Ark. App. 371.

Arkansas Code Annotated section 11-10-513 (Repl. 2012) provides that an individual shall be disqualified for unemployment benefits if he "voluntarily and without good cause connected with the work left his or her last work." "Good cause" is defined as "a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment." *Wilson v. Dir.*, 2013 Ark. App. 276, at 2. An employee is required to make reasonable efforts to preserve her job rights in order to receive unemployment benefits. *Id.*

Voss argues that the Board's finding that he left work without good cause is not supported by substantial evidence. He claims that the evidence showed "unequivocally" that his employer "took pervasive discriminatory and retaliatory action" against him "that persisted until his termination." He cites to his "improper" suspension, his "demotion" upon returning to work, and the "unreasonable" demand that Voss provide confirmation from his doctor about his prescription medication as proof of a hostile work environment and discrimination. He also asserts that this hostile work environment was "executed by the highest levels of executive management" and "ratified by the board of directors," so it was apparent that taking measures to resolve the problems would be a "futile gesture."

We disagree. The record shows that Voss was suspended for a time after a positive drug test but ultimately returned to work with full compensation for the time he was suspended. His employer made the very reasonable request for a doctor's verification that Voss's prescription medication would not interfere with his job duties, and until that verification was received, Voss was asked not to perform certain work duties, such as driving a company vehicle. Four days after his return, Voss terminated his own employment without voicing any complaints or concerns to Wyse or any other person in management. Substantial evidence supports the Board's decision that Voss voluntarily left work without good cause connected to the work and that he failed to take appropriate steps to address his concerns prior to leaving work.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Sprinkle Firm*, by: *Maximillan R. X. Sprinkle, Esq.*, for appellant.

*Phyllis A. Edwards*, for appellee.